to the Fourth Circuit. All right, thank you. Can be seated.  May it please the court, I'm Paul Sun, I represent Courtney Cowan. The district court violated Mr. Cowan's due process rights when it required him to appear at his jury trial in visible leg irons without making any determination and the appropriate on-the-record findings that those leg irons were justified and necessary for a particular interest in this specific case. Well, did he object to the wearing of the leg iron? He did, your honor. He did. The objection came up and it's on page 164 in the joint appendix. Before the trial, Mr. Cowan was in leg irons and the judge had instructed him that he would obviously have to remain seated. What J did you cite for his objection? 164, your honor. Thank you. And it had come up during the trial that the assistant U.S. attorney. So you say we were reviewing this, we don't review this for plain error. We think it is not a plain error case, your honor. There's an objection and again, the way it comes up, the assistant U.S. attorney approaches a witness. Well, she told the assistant U.S. attorney not to stand up anymore. Correct. And the court had the assistant U.S. attorney sit closer to the jury and they put the defendant away from the jury? I don't know that that's in the record, your honor. Everybody sat down. The instruction. Had to make the opening statement. Everything. Everything was from the chair. From the seated position. Don't get up anymore. Don't approach the witness. Somebody will take the witness. Correct, your honor. And when that occurred, Mr. Cowan said. He said if you're going to testify, you'll put you on the stand, or the defendant will put you on the stand while the jury's out so they won't see the leg iron. Right. The judge was careful not to have the jury see the leg edge, and there's no evidence that they ever saw him. That's correct. So it can't be any problem. Respectfully, I disagree, your honor. Well, I know you should. I mean, but that's your obligation. Your court appointed on appeal. Yes, sir. He was trying to do this himself, but there's no evidence that the jury ever saw him in leg iron. That's correct. The the court was very conscious that that there would be prejudice if the jury. And the court was very careful. In the context, I mean, reading this record, the court was very careful that the jury not see. Asked the. And successfully careful. Well, Mr. Sun, what I see on 164 and the top of 165 is where he was objecting to the US attorney being able to walk around the courtroom. Well, I don't see any objection to his wearing leg on. He refers specifically to his leg irons. He says, your honor, I had to wear these leg irons and you told me I can't get up and walk around with them. He's he he cites his own leg on. He said you're not going to get up and walk around. And he later told the US attorney she wasn't going to walk around either based on his objection, I suppose. Right. He he he the judge instructed the US attorney. And in fact, his judge uses the word symmetry. He says. You told me that due to the fact that I got on these chains on my feet that I couldn't walk past through here, but you let her get up and walk over there and hand that stuff to her. The court said she did that the first time before I caught it. And then he says, but even I pointed to you, but you still let it go. That's not an objection to his wearing the leg irons. Respectfully, your honor, he's talking about my leg irons. You I've got these leg irons on and you told me that I can't get up and walk around. That's that's an objection. He's objecting unlike the US attorney. He did that to prevent the jury from seeing the leg irons. Absolutely. And he imposed the same restrictions on the US attorney. I agree with that, your honor. And and he's got to say on the record why it is that it was required in this case to have leg irons. All right, let me answer this. Even assuming argument that it's error. What is it? What is the prejudice? The Supreme Court in DEC identifies three principles. I understand it, but nobody saw the leg. Right. So how is he prejudiced by it? Well, the second and third principles that are supported by the rule are first of all, it interferes with the defendant's ability to participate in his own defense. And I would cite that he had to stay seated. Page 164 is the very evidence that you're arguing that he that he was prejudiced by having to sit down. Well, where are you? That's part of it interferes with but having to sit down was to was to protect him. Because he's got the leg irons on it. One follows from the other, your honor. What? What did you want his leg irons taken off? He wanted to take it off. Pardon? He wanted the leg irons. He wanted it. But for security reasons, they couldn't take them off. Nothing on the record to show that, your honor. And that's exactly what this court has said. The evidence of what went on in the context of the criminal acts pretty well demonstrates why I need to be a leg iron. Respectfully, your honor, this court going way back to 1970 has said that the district court has got to make on the record findings. That's the Samuel case well before the Supreme Court talked about that in deck got to make on the record findings and the Brewster court said that the constitutional violation is complete. You didn't for plain error. You would as the government says. Yes. So it's an Alano issue. It would be a plain error issue. The but to finish, Judge Hamilton, your question, the three things that deck says are the principles behind this rule. One is the presumption of innocence. And if you don't see the shackles, I would agree that that you don't interfere with that, that fundamental right. But the other two participation in the defense and the maintenance of the dignity of the courtroom, those two things apply absolutely in this case. And those are one, two, three, three things that that deck says is are behind this rule. Why it is that that there is unless the district court makes a specific determination on the record on the particular facts of this case that shackles or whatever the restriction is, are required to protect some interest that's identified safety, security, Judge King. Absolutely. Those are the kind of things that that judges talk about as well. I think it's obvious from the restrictions, if you want to call them that to the imposed on Mr. Cowan not being able to walk around was so as a jury wouldn't see the leg arms. He made a U.S. attorney stay seated at the table just as Mr. Cowan was. So even if it's error, which I don't think it is, where is the prejudice? Well, again, Your Honor, two of the three things that deck says are the principles are are violated in this case. I don't think he ever objected to the leg arms. He objected to not being able to get up and walk around. But after the district judge said the U.S. attorney is going to be subjected to that same restriction to stay seated at the table, he didn't have any further objections to that. He can't get up and walk around because he's got the leg arms. That's why he can't get up around. I don't read your appendix to 164 to say that it can't get up. That's because he couldn't get up and walk around. I think he's objecting that he thought he was going to have to stay seated while the U.S. attorney could walk around. That's what he objected to. Your Honor, the the the thing that an objection does is put the district court on notice so that it can correct an error. And the district court was on notice at that point and had a decision. The district court could have said, Mr. Cowan, the safety and security concerns that that led me to require you to wear shackles are still in place. And notwithstanding the fact that the U.S. attorney got up and walked around once, I'm going to require you to continue to wear leg arms. Instead of doing that, what what the district judge said is, I'm going to I'm going to try to make the playing field more. I'm going to require you to continue to wear leg arms. He didn't. I'm saying that he could have done that because that objection put him on notice that there was an issue. And that's what an objection does. It has to put the district court on notice so it has an opportunity to correct an error. Not that you can come back later and complain about it and say that there was a sandbagging issue at all. But but simply to say to the district judge, there's an issue here and it gives the judge at that point a chance to correct it. That's what Mr. Cowan's to to place him in leg irons without any findings whatsoever. What the judge said instead was, I'm going to I'm going to try to keep the playing field even. I'm going to tell the U.S. attorney, you may not just like Mr. Cowan can't get up and walk around because he's got leg irons on. Madam U.S. attorney, you are not to to approach witnesses. And as your honor noted, opening statements, closings and all the things where attorneys would normally get up. And again, Mr. Cowan is his own attorney. He is he is the attorney in this case. So both attorneys are placed under a rule. But he's he's probably a shame he didn't have you there to articulate this stuff for him. But we got to deal with the cards we have understood, your honor. Um, let me let me address the the the argument on plain air. Again, respectfully, we think there's an objection there that that is sufficient. It puts the district court on notice. It's specific talking about leg irons. And but if not, on a plain air issue, the four principles, one is yes, there's absolutely air. Going back to Samuel, this court has said, and the Supreme Court certainly has said since then, you cannot require a defendant to wear leg irons without making findings on the record specific to this case. So there's air. It's plain. The substantial right that Judge Hamilton, I'll just I don't want to repeat what I said, but two of the three things that Dex says are the important principles here are just as much in play in this case as they are otherwise. And I think the fourth principle on plain air review, a front to the dignity of the court. That's the same thing that Dex says goes on when you require a defendant to appear in shackles. It's an affront to the regular decorum and dignity of the court. And so that that that I would respectfully contend matches up very nicely with the fourth part of the four part plain air prong. There's something unfair. Dex in other cases established that. But but more than that, it's it's a it's an affront to the way the courtroom decorum. It's an affront to the courtroom decorum that matches up with the the Alano principle, but also matches up with what Dex said is what's behind this rule that you can't have a defendant appear in visible shackles because that offends that that number one, if the jury can see it, it would be an impediment to the jury's consideration of assault. There's no evidence that they did. But the other two principles I would want to if I could, your honors, I'll I'll speak briefly to the to the remedy issue, because the the first of this court's case is dealing with leg irons. The Samuel case, what the court did there in the absence of findings by the district court, remanded the case back and let the district court after the fact make findings. And then it came back up through and this court affirmed. Respectfully, we contend if the court finds this error here, this constitutional error, this due process error, the remedy here has to be a new trial. And the reason for that is the Dec decision made clear that this is not just a supervisory issue. I think Samuel had at least some component of supervisory authority to the district court saying there's a principle here, but we're going to require the district courts in our supervisory authority to make findings on the record so that when it comes up, we can consider whether there is an abuse of discretion. Clearly since Dec, and we've cited two cases, the Banegas case and the Durham case where, and by the way, Judge King, in Banegas, equally so, there was no evidence that the jury ever saw the leg irons. It Judge Voorhees did in this case, took care to try to see. And in fact, in the record in that case, the judge said, well, I can't see them. And I certainly think that in that circumstance, the jury probably didn't see them. Nevertheless, in Banegas, the Fifth Circuit found, first of all, error and not harmless error because the government had then the burden to prove beyond a reasonable doubt that the jury didn't see the leg irons. And on that record, which is a little bit better for the government in this record, because at least there, the judge is saying, look, I can't see them. How could the jury have seen them? In that circumstance, the Fifth Circuit said not just error, but not harmless error. The government has not established beyond a reasonable doubt that couldn't establish beyond a reasonable doubt on this record that the jury did not see the leg irons. All right. You agree that the jury never saw the leg irons? I agree. There's nothing in the record that shows that the jury did see the leg irons. All right. Then what about the fourth prong under Olano? How were his substantial rights affected? His substantial rights were affected because his full ability to participate in his own defense. He was his only defense. He didn't have a lawyer. Right. And unlike what he would have been able to do without the shackles, he was restricted in his ability. Number one, he has to remain seated. He can't go back and forth to the witnesses in the line and make an argument. Neither could the U.S. attorney. Number two, and as was earlier pointed out, the judge said, all right, I'm going to, if you're going to testify, may I finish, Your Honor? I'm out of time. If you're going to testify, Mr. Cowne, what we're going to do is we're going to take a break. We'll send the jury out. I'll put you in the box. Then the jury won't see the shackles. Respectfully, in that circumstance, the jury is going to see right through that. Unlike every other situation. I'm sorry. The jury what? The jury is going to see through that and know what happened. Unlike every other situation where the witness is called. What did the judge say when he told them they were going to take a break? Did he say we're going to take a break so we could put Mr. Cowne in the witness stand? No. He just said we're going to take a little break. It didn't actually happen because he didn't testify. He was giving him instructions about how it would work. What I'm arguing to Your Honor is that it restricted him because in his own mind. You're saying he was driven off the witness stand by that? It affected his defense strategy because it was going to be a different procedure. Well, that's what the cases talk about when you're talking about right to counsel. We can't figure out exactly what a lawyer would have done and he's his own lawyer. But what we can look at are the circumstances that did restrict what would otherwise be his ability to fully participate in his defense. Thank you. Ms. Reichert. Good morning. Melissa Reichert on behalf of the United States. Defendant Shackles in this case were not visible to the jury and moreover because he never objected he cannot demonstrate that there was plain air or that his substantial rights were affected such that he's entitled to a new trial. Regarding the objection that Judge Hamilton was asking Mr. Son about, during the first witness's testimony, Ms. Reichert's testimony, the AUSA stood up to show Ms. Reichert the gun that the defendant possessed on the night in question. When she did this the defendant objected, just summarily objected without further description and the court overruled the objection. Later on approximately 40 pages later at JA site 164-165 when the jury had left the courtroom they discussed this objection again and the defendant objected only to the AUSA standing up and approaching the witness. He never objected to the fact that he was wearing leg shackles. As Mr. Son pointed out the point of an objection is to alert the court that there's an issue, that the court can address the issue, can make findings if it needs to or take some remedy or curative action. The objection in this case never sufficiently alerted the district court to that need because he wasn't objecting to the fact that he was wearing leg restraints. He was objecting just to the fact the AUSA was moving around and from that point forward the AUSA and the defense count and the defendant conducted their cases similarly from seated positions at their respective tables. We know further that the shackles in this case were never visible to the jury. The layout of that courtroom the Statesville courtroom is such that the jury is seated next to the government's table and the defendant's table is across the courtroom. Also very importantly the jury enters and exits the courtroom from behind the judge. They're never behind the defendant so there's really no way they ever could have seen the shackles and furthermore both tables, both the government's table and the defendant's table are covered with a curtain. Is all of what you're saying in the record? It is not. You're just explaining it to them. Why didn't you get up and put all that on the record? Because the defendant never objected to the fact that he was required to wear leg restraints below. And that's the point. If he had objected then that would have alerted the district court to the issue and as the court has noticed this is Judge Voorhees, a very careful and experienced district judge. But as Mr. Sun points out this Deck case explains what you have to do when you shackle somebody in the courtroom. Deck speaks of visibility of divisible restraints. No less than nine times Deck mentions visible restraints or restraints that will be seen by the jury. The restraints in this case were not visible and were not going to be seen by the jury. Therefore the need for the on the record findings is not implicated. We can't say take judicial notice of how that courtroom is structured like you explained though can we? We can't we can't accept your statements as evidence in the case or anything. My testimony? Your testimony. You're sort of testifying to us here. No you're not. How everything is set up down here and I'm sure it's right but I don't know how we recognize it since it's not in the record. Well I've been in that court multiple times and so I want to help the court understand the layout of the courtroom but more so. There's no indication they ever saw his shackles. Correct. That's we can accept that. Correct correct and we of course want you to accept that. He didn't articulate the proper objection. Correct and so it's under plain error review and in that same vein under plain error review he would have to the defendant would have to show that his substantial rights were affected or in other words under Alano show that the outcome of the proceeding would have been different. He cannot do that under this on this record. The shackles were not visible and there was overwhelming evidence. There were two eyewitnesses to the violent. And it's just a one count indictment of possession of a firearm? Yes your honor. By a felon? Yes your honor by felon and there were the two eyewitnesses both of whom knew the defendant before this night. There was a lot of evidence of violence and misconduct associated with the possession of the firearm that was put in. Correct correct and in addition to the eyewitness testimony there was the DNA match. The defendant's DNA was found on the gun. In light of this overwhelming evidence the fact that the shackles were not visible he cannot make out what he needs to show in order to justify plain error relief. Turning very briefly to the evidentiary issues that the defendant raised will rely primarily on the arguments we made in our brief concerning the hearsay. Are any of those preserved? The only one that is preserved is the admission of the grand jury transcript. The defendant objected to the AUSA questioning and grand jury testimony by his girlfriend. His girlfriend yes your honor. Kyla Milosavljevic I believe is how you say her name. So that one that one is preserved so that'd be reviewed for harmless error. For abusive discretion and for an abusive discretion given the fact that she was inconsistent in a number of different ways. I counted at least five of them and more than the specific inconsistencies she was very evasive with the AUSA during her testimony. She accused the AUSA at the grand jury of pressuring her and answering certain questions. She questioned the accuracy of the transcript of the grand jury. She testified that she had taken an oxycontin the morning of her grand jury testimony and that it her ability to be truthful and she admitted that she was not honest before the whole transcript of the grand jury testimony in evidence. Yes your honor and I said that that's not how many pages was it? I don't know the answer to that. It's in the joint appendix and then the defendant was permitted to cross-examine her I assume about both the test her testimony on the witness stand and the grand jury testimony. She was the opportunity she was the defendant's witness so he could have done that on redirect. I don't believe that he did but he did have the opportunity to do that. Did you put it in on the cross? Yes your honor yes your honor and even if that was somehow an abusive discretion it would still not the government would still meet its burden under the harmless error standard given the two eyewitness witness the two eyewitness accounts from Ms. Rice and Mr. Roebuck and also the DNA match from the defendant to the gun. If the court does not have any further questions for me I thank you for the time to be here. Okay I think we understand your position. Thank you. Thank you your honor it pleased the court um with regard to the objection that Mr. Cowan made as counsel said all he said was object and and that's exactly all he could do. He couldn't call attention to the fact that he was objecting to the leg irons that that that's the whole point. When the jury went out and it was 40 pages later it was the first time the jury was out of the courtroom the issue comes up again and he says I had I had to wear these leg irons and I and you told me I couldn't walk through here and and um I've said what I could on on the the um and it's satisfying the requirement to put the district court on notice. With regard to the evidence there's not two eyewitnesses there's only one witness that puts the gun in Mr. Cowan's hands that's Crystal Rice a felon drug user who has an ax to grind. He there's no question given what's found at her uh abode that he knocked the place up. He broke windows. He thought the neighbor saw him with the gun. No no your honor he did not. He did he did not that Mr. Robach said he did not see the gun um uh he's across the street she comes across the street. Didn't Mr. Robach have told him to push uh told somebody to push the uh maybe told Rice to push the gun in the grass? She says that he said that he denies that he said that that's the way that comes out in in the in testimony um she says Mr. Robach is there and she's and he's the one who suggests that I do that. The the assistant U.S. attorney asked Mr. Robach and he says no I disagree with that I didn't say that um so there's only one witness uh a witness who has a lot. Did the police officer he found the gun didn't he? The police officer did find the gun. He found the gun over in the grass. Correct um. Wasn't his the wasn't Mr. Cowan's DNA on the police gun on the gun? It was that means at some point he had that gun well at some point he had the gun um uh or his blood got on the gun. He had been convicted of a felony previously. He had been uh it's something illegal for him to possess that gun but it wouldn't have been necessarily the case that on or around June 12th I think it was 2010 he possessed the gun which is what the indictment alleged. Well wasn't Mrs. Rice's blood on the gun? No not Mrs. Rice's blood was found on her floor um was the uh the SBI uh expert's testimony um uh so there's only one uh eyewitness and and um. The date's not material that doesn't help you any. I'm sorry? The date of possession doesn't make any difference if he he had his DNA on the gun he had the gun in his hand. Your honor the indictment alleges on or about x date. I wouldn't allege that but they they could that that those dates are just for that give you notice. Sure. We got a lot of law on that well if it was 10 years before it could have. I mean the evidence is strong on his possession of the gun. It's overwhelming and we look at it in the light most favorable to the government and so they believe Mrs. Rice. The jury did right? Right. So they believe everything she said. Right. They believe so so he had the gun. I mean the the thing about the shackles and everything that's your and the evidentiary arguments you've got some issues there but not on the not on the sufficiency. I don't well and I didn't argue sufficiency your honor. I was I was really only uh highlighting going into that highlight highlighting an evidentiary point on on what's the testimony but but with regard to the to the grand jury transcript um there is an abusive discretion here because there's legal error. The the basis for the grand jury testimony to come in at all is 801 b1d which says inconsistent. You can you can introduce inconsistent testimony from a declarant's prior uh under oath um statements and there was a prior under oath statement here. All that could be introduced was inconsistent. That's what the rule says. That's what the advisory committee note says. In fact the advisory committee note says specifically we're not that this rule is going to vent. You say they introduced too much of it. They introduced the whole thing. Right and they just they should have taken a rifle shot rather than just shotgun. Correct and and what came in your honor was highly prejudicial bad acts evidence. First of all um evidence that uh Mr. Cowan supposedly as his girlfriend testified effectively admitted the crime based on a telephone call and this this is discussed in the grand jury testimony doesn't come out at all. There's nothing inconsistent about that in her testimony that she could be cross-examined with on or with the grand jury transcript. That's number one. Number two um a suggestion again that that Kyla testifies to that Mr. Cowan had threatened crystal rice. Again nothing comes in about that in the direct uh testimony uh and so you can't say that's inconsistent. Number three that that Mr. Cowan was a drug user. Again highly highly prejudicial kind of evidence that um and we've cited case law that says when that evidence comes in and it clearly did it came in because the whole transcript came in um and we would we would contend that uh and to Judge King your point that was a preserved error um uh and so we would we would respectfully contend based on those cases that we cited um that there was uh not harmless error there. For those reasons and the other reasons that I've argued today and in a brief we respectfully ask the court to reverse and remand and give Mr. Cowan a new trial. Thank you. Thank you. I also know that you're court appointed. We appreciate very much your undertaking representation Mr. Cowan. Thank you. I will come down and greet counsel.
judges: William B. Traxler, Jr., Robert B. King, Clyde H. Hamilton